UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRYAN R DIXON,

    Petitioner,

v.                                                  Case No.:  5:22-cv-182-SPC-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

    Respondents.
_____/

## OPINION AND ORDER[1]

Before the Court is Petitioner Bryan Dixon's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Respondent argues the Petition is untimely. (Doc. 8).

The State of Florida accused Dixon of sexually abusing his young daughter and charged him with three crimes: sexual battery of a person under twelve, lewd or lascivious molestation of a child, and lewd or lascivious conduct. (Doc. 10-1 at 5). Dixon pleaded not guilty and hired attorney Drew Cooper to represent him. A jury found Dixon guilty of all three counts. (*Id.* at 335-37). The Fifth District Court of Appeal of Florida (5th DCA) affirmed, (*Id.*

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

at 455-57). On June 9, 2017, the Florida Supreme Court declined to review the case. (*Id.* at 473). Dixon constructively filed a motion for post-conviction relief under Federal Rule of Criminal Procedure 3.850 on June 7, 2018. (*Id.* at 475). The post-conviction motion remained pending until April 5, 2021, when the 5th DCA issued its mandate affirming denial of the motion. (*Id.* at 674). Dixon constructively filed his federal habeas petition on April 5, 2022.

28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, sets a one-year period of limitation on the filing of a habeas petition by a person in state custody. This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Dixon does not allege, nor does it appear from the pleadings or the record, that the statutory triggers in subsections (B)-(D) apply. Thus, the limitations period began to run on the date Dixon's conviction

2

became final. 28 U.S.C. § 2244(d)(1)(A). The limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2).

There is no dispute that Dixon failed to file his Petition within the AEDPA limitations period. His conviction became final on September 8, 2017, when the time to seek certiorari from the United States Supreme Court expired. *See also Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 617 (11th Cir. 2019). 272 days ran before Dixon filed his state post-conviction relief motion on June 7, 2018. The state post-conviction proceeding tolled the limitations period until the appellate court issued its mandate on April 5, 2021. The final 93 days of the limitations period ran, and the last day for Dixon to file a federal habeas petition was July 8, 2021. But Dixon did not file his Petition until April 5, 2022. Dixon asks the Court to excuse his untimeliness because he is claiming actual innocence. He also requests equitable tolling.

**I.   Actual Innocence**

A claim of actual innocence can serve as a gateway to consideration of otherwise time-barred constitutional claims, but only in extraordinary cases. To qualify, a petitioner must "(1) present new reliable evidence that was not presented at trial, and (2) show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt

3

in light of the new evidence." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (cleaned up).  Dixon fails to satisfy either requirement.

Dixon's Petition asserts four grounds of ineffective assistance of counsel. All four relate to the proposed testimony of forensic document examiner Richard Orsini.  Cooper hired Orsini to compare a letter describing the alleged crimes purportedly written by the victim with the handwriting of the victim's mother.  Orsini concluded that the victim's mother may have written the letter. Dixon argues Cooper was constitutionally ineffective because he (1) failed to call Orsini to testify, (2) failed to request court funds to pay Orsini's fee, (3) failed to impeach the victim with Orsini's preliminary report, and (4) failed to provide Orsini samples of the victim's handwriting.

Orsini is the lynchpin of each of Dixon's habeas grounds, and his opinion is the only new evidence Dixon identifies.  Orsini testified at the state postconviction hearing.  In its analysis of the merits of Dixon's Rule 3.850 motion, the post-conviction court recounted the relevant facts and explained why Orsini's testimony was not reliable and why it would not likely have changed the outcome of the case:

> Richard Orsini, a forensic document examiner, testified that he was retained by defendant's trial counsel on May 27, 2015, and asked to compare the letter at issue to the handwriting on copies of documents purportedly drafted by Alicia Dixon, the victim's mother and defendant's ex-wife.  Mr. Orsini testified that he

4

initially thought the letter was written by two different people because the handwriting on the top of the document was much smaller than the writing on the bottom portion. After examining the letter, he opined that the letter was all written by the same individual. Following his comparison of the letter to the handwriting represented as being that of Alisha Dixon, Mr. Orsini reached the conclusion that there was "evidence to suggest or reasonable grounds for suspicion that the questioned letter was written by Alisha Dixon." Mr. Orsini forwarded a report to trial counsel advising of this opinion. Mr. Orsini was not called to testify at trial. After the trial, defendant's family forwarded handwriting samples to Mr. Orsini purportedly written by the child victim. Mr. Orsini did not know the time frame of the handwriting samples. Mr. Orsini indicated that he determined that by a preponderance of the evidence the writing samples represented as being made by the child victim did not match the handwriting in the letter.

The child victim was twelve years old when she disclosed being sexually abused by the defendant, her father. A video recorded interview of the child was conducted by a forensic interviewer with the Child Protection Team on June 30, 2011. The victim provided a detailed account of being sexually abused by her father and indicated that she wrote a letter describing the sexual abuse. She had possession of the letter at the time of the interview. The video depicts the child reading the letter out loud, and then making changes to and writing additional language on the letter. *State's evidence 2 (CPT Interview).* At the child's deposition on March 31, 2014, she recounted the details of the sexual abuse and indicated that she wrote the letter. The child testified at trial on October 9, 2014, and again relayed the details of the sexual abuse and stated that she wrote the letter.

Defendant claims that evidence that the mother wrote the letter rather than the child would have undermined the credibility of the child victim and the child's mother, Alisha Dixon. Alisha Dixon did not testify at trial. Additionally, the focus of the defense case at trial was that the child victim was angry with her father and made up the allegations. Defense counsel elicited testimony during cross examination of the child, confirming that she was angry with her father just prior to disclosing the sexual abuse.

5

> Counsel specifically questioned the child about being upset with her father because she found out that he had a girlfriend. Additionally, the child was questioned about her feelings being hurt because her father told her he would spend Father's Day with her but instead spent the day with his new girlfriend. The child admitted telling her father that she never wanted to see him again. Defense counsel established that Father's Day was June 19, 2011, and the child's disclosure was June 22, 2011.
>
> With respect to the opinion of Richard Orsini that the letter was written by the child victim's mother rather than the child, there is no record evidence to authenticate that the handwriting samples used for comparison were written by Alisha Dixon or the child victim. Additionally, Mr. Orsini had no idea when the handwriting samples of the child victim were made. Regardless, Mr. Orsini testified that everything in the letter was written by the same person and the child is captured on video making changes and additions to the letter during the interview with the Child Protection Team. Prior to trial, counsel was aware of the child's video interview and Mr. Orsini's preliminary report suggesting Alisha Dixon wrote the letter. Therefore, trial counsel's decision not to pursue this theory of defense is presumed to be strategic. Defendant has failed to rebut this presumption. Furthermore, based upon the court's review of the record, trial counsel's defense strategy was reasonable and effective. Assuming arguendo, that trial counsel's performance was deficient, Defendant has failed to establish a reasonable probability that, but for the deficiency, the result of the proceeding would have been different.

(Doc. 10-1 at 633-35).

The post-conviction court's findings—which are supported by the record—demonstrate why Dixon cannot use the actual-innocence gateway to consideration of his untimely habeas claims. First, Dixon fails to present reliable evidence. He has not demonstrated that the writing samples Orsini compared to the letter were genuine. And Orsini's conclusions that (1) the

letter was written by a single author and (2) Alicia Dixon wrote the letter are inconsistent in light of a video of the victim herself writing parts of the letter.

Second, Dixon fails to show that no reasonable juror would find him guilty in light of Orsini's testimony. Even if Orsini's proposed testimony was reliable, it would not exonerate Dixon. The one-page letter at issue describes acts of sexual abuse in general terms. (*See* Doc. 1 at 36). But in her trial testimony, the victim described the abuse in detail. (Doc. 10-1 at 32-38). She also described the abuse in a CPT interview and a deposition. Orsini's opinion does not contradict the victim's allegations. What is more, there is no evidence the allegations originated with the letter. The victim testified that she first reported the abuse to her mother during a conversation about the victim's preference for supervised or unsupervised visitation with Dixon. (*Id.* at 39). And during the CPT interview, the victim made corrections to the letter, which suggests she was not merely parroting its contents.[2]

Dixon's federal habeas petition is untimely, and because Dixon fails to present new reliable evidence that would likely exonerate him in the eyes of a reasonable jury, he is not entitled to consideration of his untimely claims.

---

[2] The victim initially wrote that Dixon abused her when she was five years old, but she later realized that she was six at the time of the abuse. (Doc. 10-1 at 43).

## II.   Equitable Tolling

A federal habeas petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted).  "[E]quitable tolling is an extraordinary remedy limited to rare and exceptional circumstances and typically applied sparingly." *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017).

Dixon asks the Court to toll the year of 2021 because COVID quarantines limited his access to the law library, and because prison staff stored or destroyed some of his legal paperwork.  Dixon presents no proof of these claims, nor does he explain how they hindered his ability to timely file a federal habeas petition.  Dixon also fails to demonstrate that he diligently pursued his rights.  Dixon has likely been aware of the facts underlying his habeas claims since November 2016, when Orsini issued his report.  And Dixon certainly knew the facts when he filed his state post-conviction report in June 2018.  But he took no action to pursue federal habeas relief before the limitations period ended.  Dixon is not entitled to equitable tolling.

Accordingly, it is now

**ORDERED:**

Petitioner Bryan Dixon's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is **DISMISSED**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (citations omitted). Dixon has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

**DONE** and **ORDERED** in Fort Myers, Florida on July 13, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record/ SA: FTMP-1

9